**BANCO CREDITO y AHORRO PONCENO,**
Plaintiff,

v.

**Josiah M. SCOTT, Defendant.**

Superior Court of Delaware.

New Castle.

Jan. 29, 1969.

Abraham Hoffman, Wilmington, for plaintiff.

Richard L. Sutton, Wilmington, for defendant.

QUILLEN, Judge.

Defendant Scott is a director and stockholder of Key Finance Corporation (Key), a parent company to the Borinquen Finance Corporation (Finance). Mr. Quing Wong is also a director and stockholder of Key. In September of 1963, defendant received the following letter from the President of Finance regarding a loan made to Finance by plaintiff Banco Credito & Ahorro Ponceno Bank; a corporation of Puerto Rico:

"As you know I have been fighting to get $50,000.00 from the Credito & Ahorro Ponceno Bank.

"At last they have authorized a credit line of $50,000 with the signature of Mr. Wong.

"Mr. Wong countersigned the note that Credito & Ahorro Ponceno Bank sent to us with the understanding that you be willing also to countersign the note.

"As a consequence, I am herewith enclosing photocopy of a letter given to me by Mr. Wong qualifying his liability with respect to this note.

"Please let me know your conformity with the above letter so that I can make the necessary arrangements for you to sign the note if you decide to do so."

On the same day on which this letter was sent to defendant, Finance turned the note over to plaintiff, as yet guaranteed only by Wong, in exchange for the loan of $50,000. Plaintiff first learned that Wong's signature had been conditional through a letter which it received from Finance dated October 7, 1963. The following is plaintiff's reply as translated:

"Your letter of the 7th of the current month surprises me, in that it informs me that Mr. Quing N. Wong conditioned his guaranty to the credit limit of $50,-000 of Borinquen Finance Corporation and that same should also be guaranteed by Messrs. Seymour Weiner, Alfred Roach and Josiah Marvel Scott. We were not informed of this condition of Mr. Wong, which was only to your knowledge and now, after you have taken the $50,000, you notify us about this matter.

"I recommended and the credit limit was approved by our Board of Directors, since you solicited it, with the signature of Mr. Wong. Having known that Mr. Wong conditioned his guaranty, we would have recommended this credit limit with the additional signatures mentioned by Mr. Wong; that which I notify you in order to put in your knowledge is that for our purposes the only person who guaranties this credit limit is Mr. Wong. "Now, you indicate that the other gentlemen mentioned by Mr. Wong are disposed to guaranty this credit limit, and to that effect I enclose corresponding letters of guaranty in order that said gentlemen may sign same on the lines indicated with a typewritten x and under which their names appear. Once these letters of guaranty are in your possession it would be convenient that you or Mr. Cordova, since you are familiar with the signatures of these men, sign as witnesses to said signatures on the first line to the right of where these gentlemen have signed.

"You should request of these men that each of them return said letters of guaranty accompanied by a personal Balance Sheet of each of them. Without the personal balance sheet of each one of these men we cannot accept their signatures to guaranty these obligations."

Defendant subsequently signed the note, predated September 16, 1963, on which this suit is now brought in consequence of Finance having defaulted on repayment of the loan. Plaintiff has moved for summary judgment on the grounds that the note, signature, and consideration moving to defendant as a stockholder of Key makes out a prima facie case in its favor. Defendant has moved for summary judgment on the grounds that his signature was given subsequent to the loan without consideration and was not relied upon by the bank in making the loan. Defendant argues further that, by the express terms of the note, the signature was not binding until a loan was made to Finance in reliance thereon.

The general principles of law which govern a promise of a guarantor given subsequent to the loan from the creditor to the prime obligor appear to be well settled and not subject to fresh review by this Court. Professor Corbin makes the following comment at 1A Corbin on Contracts § 213, pp. 286–287:

"In the great field of suretyship, it is beyond question that the debt or obligation of the principal obligor is not a sufficient basis for the enforcement of the promise of the surety or guarantor. If the promises of the principal and the surety are made simultaneously, they may be supported by a single consideration; the loan of money by the creditor to the principal is a sufficient consideration for the promises of both principal and surety. But for the promise of any surety that is made subsequently to the advancement of the money to the principal, there must be a new consideration. The fact that the loan has been made and the principal is indebted is not a sufficient reason for enforcement of the surety's subsequent promise."

No unique provision of Puerto Rican law has been cited which would alter the general principles mentioned by Professor Corbin.

■ The signing of the note by the defendant Scott did not create any direct contractual liability on his part to the plaintiff because Scott received no consideration. The loan had already been made on Wong's signature and without any reliance on the Scott guaranty. Insofar as the plaintiff was concerned, the Scott guaranty was a subsequent separate transaction.

There are in the plaintiff's brief numerous statements which state or suggest that Scott had promised Wong prior to the loan that Scott also would guarantee the loan. Even assuming the legal significance of this alleged fact, which does not involve any representation to the plaintiff such

fact is not established or even supported by the record.

 Also, in the plaintiff's reply brief, it is argued that the plaintiff's forbearance in reliance on the Scott guaranty fills the consideration void. But, again, there is nothing in the record to establish or even support forbearance by the plaintiff in reliance on the Scott guaranty.

The record discloses no consideration for the Scott promise. The promise therefore created no direct contractual liability from Scott to the plaintiff as alleged in the complaint. Consequently, the defendant's motion for summary judgment is granted and the plaintiff's motion for summary judgment is denied. It is so ordered.